Charles L. Roberts (Utah Bar #5137)
**WASATCH-IP, A PROFESSIONAL CORP.**
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 292-5300
Email: croberts@wasatch-ip.com

*Attorney for Resolution Strategic Development, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| RESOLUTION STRATEGIC DEVELOPMENT, INC., a Utah Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>POC Sweden AB, a Swedish corporation,<br><br>Defendant. | **COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No: ________ |

Plaintiff Resolution Strategic Development, Inc., ("RSD") through its legal counsel, complains against defendant POC Sweden AB ("POC"), as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant POC's breach of a written patent license agreement under which POC agreed to pay royalties on products practicing RSD's patented in-mold helmet technology (the "License Agreement"). POC has manufactured and sold thousands of its OBEX helmets in the United States while refusing to report those sales or pay the royalties required by the License Agreement.

2. POC voluntarily entered into a written License Agreement with RSD under which it received valuable rights to practice RSD's patented technology in exchange for the payment of

royalties on products falling within the Agreement's definition of "Licensed Products." The parties' dispute concerns POC's contractual obligations under that Agreement.

3. The License Agreement broadly defines "Licensed Products" to include products whose manufacture, use, sale, or offer for sale would constitute infringement of one or more claims of the Licensed Patents absent the license. POC's OBEX helmet falls within that contractual definition.

4. Despite its contractual obligations, POC deliberately failed to include the OBEX helmet in its quarterly royalty reports, failed to pay royalties on OBEX sales, and failed to disclose the existence of those sales to RSD, thereby materially breaching the License Agreement.

5. In April 2021, after RSD raised concerns regarding the royalty status of the OBEX helmet, POC acknowledged that it was aware of the patent at issue and recognized that the parties disagreed over whether the OBEX should be treated as royalty-bearing under the License Agreement.

6. POC's failure to perform its contractual obligations has deprived RSD of substantial royalties, contractual interest, and other benefits expressly provided by the License Agreement.

7. RSD therefore seeks a declaration that the OBEX helmet constitutes a Licensed Product under the License Agreement, damages for POC's breach of contract, an accounting of all royalty-bearing sales, recovery of contractual interest and attorneys' fees, and such further relief as the Court deems just and proper.

## PARTIES

8. RSD is a Utah corporation with its principal place of business in Summit County, Utah.

9. RSD is the owner by assignment of United States Patent No. 8,256,032 and related patents, including United States Patent No. 10,245,529 (collectively, the "Licensed Patents"), which relate to protective helmets incorporating integrated in-mold ventilation technology.

10. Upon information and belief, POC is a corporation organized under the laws of Sweden with its principal place of business in Stockholm, Sweden.

11. POC imports, markets, and sells protective helmets throughout the United States, including within the District of Utah.

12. At all relevant times, POC was a party to and performed under the License Agreement with RSD, accepted the benefits of the License Agreement, and remained subject to its contractual obligations.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States insofar as the parties' dispute necessarily requires determination whether POC's OBEX helmet falls within the scope of claims of the Licensed Patents, as incorporated by reference into the License Agreement.

15. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 because an actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the License Agreement.

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) and pursuant to the License Agreement, in which POC expressly agreed that all disputes arising out of or relating to the Agreement shall be resolved exclusively in the state or federal courts located in the State of Utah.

17. POC has purposefully availed itself of the privilege of conducting business within the State of Utah by entering into the License Agreement with a Utah corporation, directing royalty reports and payments to Utah, communicating extensively with RSD in Utah concerning the License Agreement, and agreeing that Utah law governs the License Agreement.

18. POC has further purposefully directed substantial commercial activities toward the United States and this District through the marketing, distribution, and sale of products covered by the License Agreement.

19. Personal jurisdiction over POC is proper because POC has expressly consented to jurisdiction in Utah under the License Agreement and because POC has sufficient minimum contacts with Utah consistent with the Due Process Clause.

## **FACTUAL ALLEGATIONS**

### **The Licensed Patents**

20. RSD is the owner of United States Patent No. 8,256,032 (the "'032 Patent") and related patents, including United States Patent No. 10,524,529 (the "'529 Patent) (collectively,

the “Licensed Patents”). The Licensed Patents relate generally to protective helmets incorporating in-mold construction and integrated ventilation structures.

21. Since issuance of the Licensed Patents, RSD has actively licensed its patented technology to numerous manufacturers of protective helmets throughout the ski industry.

**The License Agreement**

22. On or about April 7, 2014, RSD and POC executed the License Agreement.

23. Under the License Agreement, RSD granted POC a royalty-bearing, nonexclusive license to make, have made, import, market, distribute, sell, offer for sale, and otherwise dispose of Licensed Products within the Licensed Territory.

24. The License Agreement defines “Licensed Products” to include:

> (a) the Fornix helmet…; and
>
> (b) any product whose manufacture, use, sale or offer for sale within the Licensed Territory during the term of any of the Licensed Patents, absent the consent of the patent owner, would constitute infringement of one or more claims of the Licensed Patents...

25. The License Agreement required POC to pay RSD royalties based on Net Sales of all Licensed Products.

26. The License Agreement required POC to provide quarterly accounting statements identifying royalty-bearing products and calculating royalties due. Royalties became due no later than thirty (30) days following the close of each calendar quarter.

27. The License Agreement provides that unpaid royalties accrue contractual interest at the rate of 1.5 percent per month. The License Agreement further provides that failure to pay royalties constitutes a material breach of the Agreement.

28. The License Agreement also grants RSD audit rights to verify the completeness and accuracy of POC's royalty reports and payments. The License Agreement provides that Utah law governs disputes arising under the Agreement and that the state and federal courts located in Utah possess exclusive jurisdiction over such disputes.

**POC's Performance Under the License Agreement**

29. Following execution of the License Agreement, POC recognized the validity of the Agreement and accepted the benefits conferred by the license. POC submitted royalty reports and paid royalties on products that it recognized as Licensed Products.

30. During this same period, POC imported, marketed, and sold its OBEX helmet throughout the United States. The OBEX helmet incorporated structural features that caused it to fall within the contractual definition of a Licensed Product under the License Agreement. Notwithstanding its contractual reporting obligations, POC omitted the OBEX helmet from its royalty reports.

31. POC likewise failed to pay any royalties attributable to sales of the OBEX helmet.

**The Parties' 2021 Communications**

32. By early 2021, RSD raised concerns regarding whether the OBEX helmet should be treated as a Licensed Product under the License Agreement. On April 25, 2021, POC's then-General Counsel, Richard Luskin, acknowledged RSD's concerns in writing.

33. Luskin acknowledged that POC was aware of the Licensed Patents discussed by the parties. Luskin further acknowledged that the parties disagreed regarding whether the OBEX helmet should be treated as falling within the License Agreement.

34. Luskin requested that RSD provide additional written explanation regarding its position concerning the OBEX helmet. Luskin further observed that Onward Helmets (a manufacturing entity in China related through some common ownership to RSD) manufactured helmets for POC and expressed POC's desire to maintain that manufacturing relationship.

35. At no time during these communications did POC contend that the License Agreement relieved it of its contractual obligation to provide complete royalty reports. Nor did POC seek judicial determination regarding whether the OBEX helmet constituted a Licensed Product under the Agreement.

36. Instead, POC continued marketing and selling the OBEX helmet while continuing to omit those sales from its royalty reports.

**POC's Continuing Breach of the License Agreement**

37. Following the April 2021 communications, POC continued importing, marketing, offering for sale, and selling the OBEX helmet. During this period, POC continued to submit royalty reports under the License Agreement. Those reports omitted sales of the OBEX helmet.

38. POC likewise paid no royalties attributable to OBEX sales. POC did not notify RSD that it had permanently determined the OBEX helmet was excluded from the License Agreement. Nor did POC seek declaratory relief regarding the parties' respective contractual rights.

39. Instead, POC unilaterally elected not to report or pay royalties on OBEX sales while continuing to enjoy the protections and benefits afforded by the License Agreement.

40. RSD's demands that POC pay royalties on its sales of the OBEX helmet have been rebuffed.

41. An actual controversy therefore exists between the parties concerning whether the OBEX helmet constitutes a Licensed Product under the License Agreement and concerning POC's contractual obligation to report and pay royalties on sales of that product.

**Count I – Declaratory Judgment (28 U.S.C. §§2201-2202)**

42. RSD restates and incorporates herein each of the paragraphs above as if alleged herein.

43. An actual, present, and justiciable controversy exists between RSD and POC concerning their respective rights and obligations under the License Agreement.

44. RSD contends that the OBEX helmet constitutes a "Licensed Product" within the meaning of the License Agreement because its use, sale, offer for sale, and importation within the Licensed Territory would, absent the License Agreement, constitute infringement of one or more claims of the Licensed Patents.

45. POC disputes RSD's position and contends that the OBEX helmet is not a Licensed Product under the License Agreement and that no royalties are owed with respect to the OBEX helmet.

46. The parties' dispute is concrete and immediate. It concerns ongoing contractual obligations arising from the License Agreement, including the obligation to report sales of Licensed Products, pay royalties on those sales, account for past sales, and pay contractual interest on overdue royalty payments.

47. Resolution of this controversy requires a determination whether the OBEX helmet falls within the contractual definition of a Licensed Product as set forth in the License Agreement.

48. A judicial declaration will terminate the uncertainty and controversy giving rise to this action by determining the parties' respective contractual rights and obligations under the License Agreement.

**Count II – Breach of License Agreement**

49. RSD restates and incorporates herein each of the paragraphs above as if alleged herein.

50. The License Agreement is a valid, binding, and enforceable contract supported by adequate consideration.

51. RSD has fully performed all material obligations required of it under the License Agreement or has been excused from further performance by reason of POC's material breaches.

52. Among other things, the License Agreement obligates POC to:

a. identify all Licensed Products sold within the Licensed Territory;

b. submit complete and accurate quarterly royalty reports accounting for sales of Licensed Products;

c. pay royalties on Net Sales for all Licensed Products;

d. make such royalty payments within thirty (30) days following the end of each calendar quarter;

e. maintain books and records sufficient to verify the completeness and accuracy of its royalty reports and payments; and

f. permit RSD to audit those books and records as provided by the Agreement.

53. The License Agreement expressly defines “Licensed Products” to include products whose manufacture, use, sale, offer for sale, or importation would constitute infringement of one or more claims of the Licensed Patents absent the License Agreement.

54. The OBEX helmet constitutes a Licensed Product within the meaning of the License Agreement.

55. POC imported, marketed, offered for sale, and sold the OBEX helmet throughout the United States during the term of the License Agreement.

56. Despite those sales, POC failed to identify the OBEX helmet as a Licensed Product in its quarterly royalty reports, thereby breaching the License Agreement.

57. POC further failed and refused to pay royalties on sales of the OBEX helmet as required by the License Agreement, thereby breaching the License Agreement.

58. POC’s failure to report and pay royalties was not the result of mistake or inadvertence. Rather, POC intentionally adopted the position that the OBEX helmet was not royalty-bearing under the License Agreement while continuing to import, market, offer for sale, and sell that product under the protection afforded by the License Agreement.

59. POC continued selling the OBEX helmet while withholding royalties despite its knowledge that RSD disputed POC’s position and maintained that the OBEX helmet fell within the License Agreement’s definition of a Licensed Product.

60. The License Agreement provides that unpaid royalties accrue contractual interest at the rate of 1.5 percent per month until paid.

61. The License Agreement further provides that POC's failure to pay royalties constitutes a material breach of the License Agreement and obligates POC to reimburse RSD for all costs, attorneys' fees, and expenses incurred in enforcing the Agreement.

62. As a direct and proximate result of POC's breaches, RSD has suffered damages including, without limitation:

a. unpaid royalties due under the License Agreement;

b. contractual interest at 1.5% per month;

c. attorneys' fees and litigation expenses; and

d. such additional damages as may be proven at trial.

63. POC's breaches are continuing in nature to the extent POC has failed to make full payment of royalties and contractual interest owed under the License Agreement.

64. Unless enjoined or otherwise ordered by this Court, POC will continue to dispute its contractual obligations and continue to withhold amounts due under the License Agreement.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, RSD requests a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, RSD requests the following relief:

1. Pursuant to 28 U.S.C. §§ 2201 and 2202, that the Court declare that:

a. the License Agreement is a valid and enforceable contract;

b. the OBEX helmet constitutes a Licensed Product within the meaning of the License Agreement;

c. POC was contractually obligated to include sales of the OBEX helmet in its quarterly royalty reports;

d. POC was contractually obligated to pay royalties on sales of the OBEX helmet in accordance with the License Agreement;

e. POC's failure to report and pay royalties on sales of the OBEX helmet constitutes a breach of the License Agreement; and

f. RSD is entitled to recover unpaid royalties, contractual interest, and such additional contractual remedies as are provided by the License Agreement and applicable law.

2. That judgment be entered in RSD's favor and against POC on RSD's Breach of Contract claim as follows:

a. awarding all unpaid royalties due under the License Agreement for sales of the OBEX helmet by POC;

b. awarding contractual interest on all overdue royalty payments through the date of judgment at the rate provided in the License Agreement;

c. awarding RSD its reasonable attorneys' fees, costs, and expenses incurred in enforcing the License Agreement;

d. ordering POC to provide a complete accounting of all sales of the OBEX helmet and any other Licensed Products not previously reported under the License Agreement; and

e. awarding prejudgment and post-judgment interest as allowed by law and the License Agreement; and

3. Awarding such other and further relief as the Court deems just and equitable.

Dated this 10th day of July, 2026.

**WASATCH-IP, A PROFESSIONAL CORP.**

By: /s/ Charles L. Roberts
Charles L. Roberts (5137)
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 292-5300
E-mail: croberts@wasatch-ip.com

*Attorney for Resolution Strategic Development, Inc.*